## Hunter's Appeal.

*Injunction to restrain Creditor of Husband from selling Wife's Real Estate on Execution.*

1. Under the Act of 11th April 1848 and 12th April 1850, the levy and sale of a wife's real estate by a creditor of her husband's, on execution against him, is contrary to law and may be restrained by injunction.

2. In order to authorize the interference of a court of equity, a clear case of title in the wife under the Acts of 1848 and 1850, must be made out; otherwise the court will not interfere, but leave the parties to their remedy at law.

3. Where the real estate of a wife was levied on by a creditor of her husband's, and was about to be sold, it was error in the court to dismiss a bill filed by her, for a preliminary injunction to restrain the execution-creditor from selling it.

APPEAL from the Common Pleas of *Berks county*, sitting in Equity.

This was an appeal by Mary Hunter, wife of Daniel V. R. Hunter, from the decree of the Common Pleas, dismissing her bill in equity, praying for an injunction to prevent Daniel Krauss and George Krauss, administrators of Nathan Krauss,

deceased, from selling her real estate under a judgment against her husband.

The bill, which was filed February 4th 1860, set forth that the complainant was the absolute and separate owner, in fee simple, of a tract of land in Oley township, Berks county, containing about 175 acres, describing it, which she held under the last will and testament of her mother, Catherine Kemp, deceased, which was proved April 15th 1848; that her husband had no interest in, or right or title to the same, nor any control over it, nor any marital right or life or curtesy estate, initiate or otherwise, of, in, or to the same, and that it was in no way liable for his debts.

That the defendants in the bill held a judgment against her husband, the said Daniel V. R. Hunter, for $2128.50, with costs, which they claimed to be a lien on said land, or on some interest of her husband therein, under which they had issued an execution, levied on and had it condemned, and intended to have it sold by the sheriff in satisfaction thereof, whereby her title to the said property had been prejudiced and injured, and complainant prevented from holding and enjoying it as her own sole and separate estate, &c., and praying for an injunction to restrain the defendants from further proceeding in the premises, with a prayer for general relief.

The language of the will of Mrs. Kemp, by which this land was devised to Mrs. Hunter, was as follows:—" I order that my daughter Mary Hunter shall have the following described tract of land marked with red boundaries on the draft, and designated with the letter C, and containing 175 acres and 21 perches, with all the improvements and everything thereto belonging, and with all crops growing thereon, and hay and straw and manure."

" I do hereby give, bequeath, and devise the share of my daughter Mary Hunter (all the foregoing estate) to Lewis Hottenstein of Maxatawny, in trust however for the sole and separate use and benefit of said Mary, the same is to be in no way whatever liable for her husband's debts, nor is he to have any control over the same, nor any marital right, nor any curtesy estate, nor shall any of the Hunters have any control over the same.   But if my daughter Mary should be dissatisfied with her aforesaid trustee, I give her privilege to make choice of one by applying to the court of Berks county and have one appointed. But in case that the present husband (Daniel V. R. Hunter) of my daughter Mary should die, and that she should survive him, in such case I order and it is my will that the trustee of my daughter Mary shall pay over and assign unto her all the whole of the legacy and bequest intrusted unto my said daughter Mary, and to her heirs and assigns for ever.   But if it should happen that the husband of my daughter Mary should survive her, in that case I direct that he shall have his home and living

with his children on the land, provided he remains single, but in nowise shall the children or the property be answerable or accountable for any of his debts."

On filing this bill, a rule was granted on the defendants requiring them to show cause why the injunction prayed for should not be granted.

The court below, on hearing, discharged the rule and dismissed the bill of complainant, on the ground that the complainant had an adequate remedy at law, on the ejectment to be brought by the sheriff's vendee, and that there was therefore no jurisdiction in equity, from which decision this appeal was taken.

*John Banks*, for appellant. .

*B. Frank Boyer*, for appellee.

The opinion of the court was delivered, July 25th 1861, by

THOMPSON, J.—This was a bill to restrain the appellees from proceeding to sell certain real estate of the complainant on an execution against her husband. The averment in the bill of exclusive ownership in Mrs. Hunter, was not denied by the appellees; they neither pleaded, answered, nor demurred, but when a motion was made for a preliminary injunction, it was refused, and the bill dismissed. Thus the exclusive ownership and title of the wife, the complainant, stood admitted, and the bill must have been dismissed for want of jurisdiction or the inapplicability of the remedy.

The question now is, did the chancery power of the court extend far enough to afford the relief prayed? Nothing but want of jurisdiction in the court or irrelevancy of the proposed remedy, could have authorized the summary dismissal of the bill. Did they exist? On the pleadings the only question presented was, whether, since the Acts of 11th April 1848 and 12th April 1850, a levy and sale of a wife's property on execution against her husband, was or was not contrary to law? If it was, and there was no adequate remedy at law for the act, then the court had jurisdiction of the subject-matter of the complaint; and it not being denied that it also had of the parties, the relief prayed for ought to have been granted.

It may and ought to be conceded, that it has been the constant practice in this Commonwealth, for a creditor to seize in execution any property which he may believe his debtor has an interest in, and sell it in satisfaction of his debt. It is an axiom of our law, that in some form or other, all property of a debtor not expressly exempt, is liable to be taken in satisfaction of his debts. Upon this principle, wherever an interest is alleged, the execution is allowed to go, and the question of interest is afterwards

tried on the title obtained at the sale. If the debtor had no interest in the property sold, no title passed. The suffering party is the credulous bidder. True, the practice does often put the real owner to the trouble and expense of defending against title so obtained, and of showing that the debtor had no interest whatever in the property sold. The cloud upon his title is often doubtless an injury; but notwithstanding this, the doctrine that the creditor has a right to seize and sell his debtor's interest in property, whatever it may be, has been so firmly fixed, that the courts have not been armed with power to interfere *in limine.* It cannot generally be ascertained in advance, when it is realty that is seized, whether the debtor has title or not. And the act of issuing execution on a valid judgment not being contrary to law, courts of equity have not been supposed to have power under our statutes, where the exemption does not exist, to restrain it. That question of title is usually left to the test of an ejectment. With this practice it is not intended to interfere in this decision.

By the Act of 1848, it is provided that the property of married women shall continue to be their separate property after marriage as fully as before, and "shall not be *subject* to *levy* and execution for the debts and liabilities" of the husband. And further to secure to them the right of property, the Act of 1850 provides, "that the real estate of any married woman in this Commonwealth, *shall not be subject* to execution for any debt against her husband, on account of any interest he may have, or may have had therein as tenant by the curtesy, but *the same shall be exempt from levy and sale* for such debt during the life of the wife."

This act plainly forbids execution, because it expressly *exempts* the property from *levy* and *sale.* The question then recurs, are a levy and proceedings to sell a wife's property for the debt of the husband in the lifetime of the wife, under the exemption and prohibition of the acts cited, contrary to law or not? It is not easy to demonstrate the truth of a proposition that is self-evident, and it would be little less troublesome to prove what is so palpable on the face of these statutes. The whole object of the latter one is to deny legality to a levy and sale of the property therein described. Whatever, therefore, cannot be done without a violation of law, must be contrary to law, and being so, may be restrained if there be no adequate remedy at law.

The fifth clause of the 3d section of the Act of 16th June 1836, now in force throughout the Commonwealth, gives the several courts jurisdiction in equity "for the prevention or restraint of the commission or continuance of acts *contrary to law,* and prejudicial to the interests of the community or the rights of individuals." Acts which may be restrained, must be *both* con-

[Hunter's Appeal.]

trary to law *and* prejudicial to the interests of the community or the rights of individuals: 7 W. & S. 106; Br. Eq. § 282. Acts simply against equity are not within the power: 6 Wh. 541.

We have already shown the act of a levy on a married woman's property, with proceedings necessary to consummate a sale, to be contrary to law. Is not the prohibition itself sufficient evidence that the act, in the estimation of the legislature, would be prejudicial to the right protected by the prohibition? This cannot be doubted. It would be folly to prohibit harmless acts. It is, therefore, always to be presumed, that whatever is prohibited, is either wrong in itself or against the policy of the government. The foundation for the prohibition in both cases, is the prejudicial consequences of the acts prohibited. It is not, therefore, necessary, when there is a statutory prohibition of an act, to trace out prejudicial consequences to bring it within the defined jurisdiction in equity of our courts. If the law be transcended or disobeyed, the act may be restrained: 6 Harris 18; 12 Id. 159; 6 Paige 133; 1 Railw. C. 135.

In the case before us, the property was confessedly the wife's exclusively. It was exempt from levy and sale for the debts of the husband by statute. Subjecting it to such process for such purposes was also prohibited by the same statute; notwithstanding this, the appellees did levy on it, and were proceeding to sell it when the injunction was applied for. This law and these facts clearly brought the case within the chancery jurisdiction of the court below, and instead of dismissing the bill, the court should have granted a preliminary injunction to restrain the appellees from proceeding to levy and sell the property. That this is proper as a remedy was also said by my brother Woodward, in Barncord *v.* Kuhn, 12 Casey 383.

Doubtless, in applications like the present, a clear case, under the Acts of 1848 and 1850, of title in the wife must be shown; otherwise a court of equity will not interfere, but leave the creditor to pursue his process, and the purchaser at the sale to establish his title in ejectment. Here the wife's title was not disputed, nor that the debt was the husband's, and consequently the dismissal of the bill was error. To cases of disputed ownership, or where there is no exemption, the authorities cited by the appellee generally apply; but that is not this case.

Decree of the Court of Common Pleas dismissing the bill reversed, and the same is ordered to be reinstated, with directions to proceed according to equity practice therein, and that the appellees pay the costs of this appeal.