## Leah Shober *v.* Harrison Brothers & Co. and Andrew H. Hershey, Sheriff, Appellants.

*Fraud—Jurisdiction, equity—Injunction to restrain sheriff's sale.*

A fraudulent concealment of the husband's title in the name of the wife often lies at the bottom of cases where real estate standing in the wife's name is levied upon by the husband's creditors, while on the surface her title may be apparently good.

The jurisdiction of equity for the prevention or restraint of the commission of acts contrary to law and prejudicial to the rights of individuals was never intended to be used to obstruct the collection of debts. It is only where the creditor is clearly and undeniably proceeding, against right and justice, to use the process of the law to the injury of another that equity intervenes to stay his hand. To adopt another rule would lead to a constant use of the powers of equity to hinder and delay the collection of honest claims and to prevent the creditor from reaching the marrow of a fraud.

*Husband and wife—Wife's title to real estate—Husband's creditors—Sheriff's sale—Injunction.*

Where real estate standing in a wife's name is levied upon as the husband's property, a bill filed by the wife to enjoin the sale will not be sustained where the answer of the execution creditors disputes the alleged ownership of the wife and alleges that title was taken in her name to defraud creditors. Such a case is not within the exception recognized in Hunter's Appeal, 40 Pa. 194, and the parties will be left to their legal remedy.

Argued Nov. 10, 1896. Appeal, No. 54, Nov. T., 1895, by Harrison Bros. & Co., from decree of C. P. Lancaster Co., Equity Docket, No. 3, p. 97, making perpetual the preliminary injunction and restraining defendant from selling by sheriff's sale certain real estate. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, ORLADY and SMITH, JJ. Reversed.

Bill to enjoin sheriff's sale.

The facts sufficiently appear from the opinion of the Superior Court.

*Errors assigned* were, (1, 2) in not dissolving preliminary injunction and making the same perpetual.

(3) In finding that the said injunction issued before the day fixed for the sale. The fact is, that said injunction was only asked for and issued on the day fixed for the sale, viz: January 19, 1895, and only a few hours before the hour for the sale.

(4) In not finding that in waiting so long, the plaintiff was guilty of laches, and not entitled to the relief she asked.

(5) In finding that plaintiff, at the time of her marriage, in 1885, had about $2,300; that she received about $600 from her husband's mother; that at the time of her husband's assignment he owed her $975, for which she held his note, etc., and got money from other sources.

(6) In finding " that the testimony shows clearly that this purchase money, for this property, was paid by Leah Shober, the complainant, and is uncontradicted."

(7) In finding " that respondents presented no testimony, nothing to indicate or show that the purchase money was not paid by Leah Shober, nor to show that her husband, John A. Shober, had any right or title to, or interest in this property upon which they have levied, and were about to sell as his property."

(8) In not finding that the title to the real estate in dispute was, and is, in John A. Shober, as whose property the same was levied upon, condemned, and on the point of being sold, in paying defendants' judgment.

(9) The court should have found that defendants' answer was responsive to plaintiff's bill, and was not overthrown by the testimony of two competent witnesses, viz: the plaintiff and her husband, and, therefore, should have found the averments in said answer as true.

(10) In not finding that the purchase money of the real estate in question was paid for, either directly or indirectly, by John A. Shober's money; and the deed thereto, put in the name of this plaintiff, for the purpose of shielding, unlawfully and fraudulently, said real estate from being made amenable to defendants' judgment, and the claims of others, against said John A. Shober.

*William R. Wilson,* for appellants.—The answer of appellants is responsive to the bill, and, therefore, conclusive in respondents' favor, unless it is overcome by the satisfactory testimony of two witnesses, or of one witness, corroborated by other circumstances and facts which give it a greater weight than the answer. Burke's Appeal, 99 Pa. 350; Huston v. Harrison, 168 Pa. 136; Bailie v. Bailie, 166 Pa. 472.

The charge is one of fraud, which is always for the jury: Loucheim Bros. v. Henszey, 77 Pa. 305.

Bispham's Equity, p. 258, par. 201, lays down the law that " fraud may be inferred without direct proof from the attendant circumstances: " Kaine v. Weigley, 22 Pa. 179; Kinzer v. Mitchell, 8 Pa. 80; Glessner v. Patterson, 164 Pa. 224.

As a general rule, it has been the practice in Pennsylvania for a judgment creditor to seize and sell, in satisfaction of his debt, any real estate in which his debtor has, or is believed to have, an interest. Whenever such interest is alleged, the creditor is permitted to proceed with his execution, and if there be any question in regard to the title, it may be raised in an action of ejectment: Davis v. Michener, 106 Pa. 395; Taylor's Appeal, 93 Pa. 21; Winch's App., 61 Pa. 424. See also Artman v. Giles, 155 Pa. 416.

The plaintiff was guilty of gross delay and laches: Butler v. Egge, 170 Pa. 239.

*George Nauman,* for appellee.—That an injunction will lie to restrain the sale of a wife's real estate at the instance of her husband's creditors is now the settled law of the state: Hunter's Appeal, 40 Pa. 194.

The fact that a husband acts as agent for his wife in carrying on a business, in buying and selling, and in investing her money, does not, without her consent, transfer her property to him, or render it liable for his debts, and this although the business be conducted in his name : Troxell v. Stockberger, 105 Pa. 405; Shuster v. Kaizer, 111 Pa. 217.

OPINION BY WICKHAM, J., December 7, 1896 :

On October 24, 1884, John A. Shober made an assignment, for the benefit of his creditors, to Henry Baumgardner. Harrison Brothers & Company, the appellants here, had a suit pending against Shober at the time, in which they obtained judgment on November 14, 1884. It is conceded that the assigned estate paid less than eleven per cent of the assignor's debts.

For many years before the assignment Shober had in his employ, in his paper factory, Leah Derredinger, whom he married in July, 1885. She and he testify that her wages averaged from $30.00 to $35.00 per month. In 1886, according to their testimony, the wife established the husband in the junk business, as her agent. This business was conducted in her name, but she appears to have known little about its details, the husband looking after everything and handling all the money. It was continued until 1891. Out of it they supported themselves and their two children, and when they retired, in the year last mentioned, they were possessed of $2,000 worth of real estate, purchased for $1,800 in the name of the wife, in 1888, and at least $6,000 invested in her behalf in mortgages. Two of these mortgages, amounting to $2,400, it seems were acquired as early as 1889. It is scarcely to be wondered at that the appellants thought such accumulations could hardly have been made in the junk business, in so short a time, through the unaided management of one who had utterly failed in the conduct of his own affairs. They, therefore, in October, 1894, issued a writ of fieri facias on their judgment, which had been kept alive by revival, and caused a levy to be made on the real estate above mentioned. The property was condemned, and a writ of vendi-

tioni exponas issued, whereon it was advertised to be sold on January 19, 1895. A few hours before the time fixed for the sale, Mrs. Shober filed her bill in equity against the appellants and the sheriff, alleging that she was not only the nominal but as well the real owner of the property, it having been paid for out of moneys not derived from her husband, and asking that the defendants in the bill be enjoined from making the sale. A preliminary injunction was granted, which was afterwards made perpetual as against the appellants, the sheriff, who never should have been joined, having in the meanwhile been dropped out as a defendant, by amendment. Not only were the appellants enjoined, but, notwithstanding the laches of the plaintiff and the needless expense incurred by the improper joinder of the sheriff, they were required to pay all the costs of the proceeding.

The appellants' answer denies that the real estate levied on was paid for by the wife, out of her own separate estate, and alleges that the purchase money was paid by the husband and the title taken in her name to defraud the appellants and other creditors. The case was heard on bill, answer, replication and the uncorroborated testimony of Shober and wife.

The law presumes that the husband is the true owner of the property, and the wife's title must be established by clear and satisfactory evidence. She holds the laboring oar, and the presumption above referred to is not affected by the late statutes enlarging her rights and liabilities: Campe v. Horne et al., 158 Pa. 508 ; Endlich and Richards on Married Women, 28.

In Hunter's Appeal, 40 Pa. 194, a wife filed a bill in equity, asking that certain judgment creditors of her husband might be enjoined from selling on execution her patrimonial estate. The defendants neither pleaded, answered nor demurred. For this reason the Supreme Court reversed the decree of the court below, refusing the injunction and dismissing the bill, and remitted the record with directions to proceed in the case according to equity. At the same time, Mr. Justice THOMPSON plainly intimated that the decision is not applicable to cases of disputed ownership. In Winch's Appeal, 61 Pa. 424, decided while the distinguished jurist above named was yet on the bench, Mr. Justice AGNEW says: " Where the title of the wife is disputed, and where the creditor has a right to proceed against the property to test her title, it is error to assume jurisdiction and

enjoin against the creditor's execution, and thus to withdraw contested facts from a trial by jury. To do this is to deny the undoubted right of a creditor to sell whatever interest he believes the husband has in the property. A fraudulent concealment of his title, in the name of the wife, lies at the bottom of such cases, while on the surface her title may be apparently good. The jurisdiction given to a court of equity for the prevention or restraint of the commission of acts contrary to law and prejudicial to the rights of individuals, was never intended to be used to obstruct the collection of debts. It is only where the creditor is clearly and undeniably proceeding against right and justice to use the process of the law to the injury of another that equity intervenes to stay his hand. To adopt another rule would lead to a constant use of the powers of equity to hinder and delay the collection of honest claims and to prevent the creditor from reaching the marrow of a fraud. The case of Hunter's Appeal, 40 Pa. 194, affords no countenance to this decree. There the exclusive ownership of Mrs. Hunter, in her own right, was not denied by plea, answer or demurrer."

The same rule was enforced in Taylor's Appeal, 93 Pa. 21, Mr. Justice Sterrett saying, " In Hunter's Appeal, 40 Pa. 194, an injunction restraining the sale of a wife's real estate on an execution against her husband was sustained. But the decision was put on the ground that the separate property of a married woman is expressly exempted by statute from levy and sale for the debts of her husband, coupled with the fact, admitted by the pleadings, that the land levied on belonged exclusively to his wife. This fact was a controlling influence in the case. In Winch's Appeal, supra, where the title of the wife was disputed, the court refused to restrain the creditor from proceeding with his execution against the alleged interest of the husband, and thus preparing the way to test the title, if it became necessary."

The above decisions are cited and recognized in Davis v. Michener, 106 Pa. 395, where it was held that equity will not interfere save where the title is undisputed or admitted. When, in any case, it is seriously denied, the controversy must be determined in ejectment. · Is the wife's title seriously disputed here? Of this there can be no question. We have first the legal presumption, not raised by the facts in Hunter's Appeal, that the

purchase of the real estate levied on was made with the husband's money, which presumption the wife is required to meet and overcome. Second, there is the allegation in the appellant's answer, which is consistent with and sustained by the presumption, that the property was paid for by money of the husband and title taken in the wife's name in order to defraud his creditors. Had the matter stopped here, we think it could not be said, quoting from Hunter's Appeal,—words adopted in the later cases,—that the creditors are "clearly and undeniably proceeding against right and justice." It should be added. that conceding it to be true under the authority of Socher's Appeal, 104 Pa. 609, that the denial, in the answer of the appellee's allegation of payment of the purchase money, being based merely on information and belief, may not be evidence for the appellants so as to require the appellee to establish her case, by more than one witness, yet the dispute raised by the pleadings alone, made the case one for a jury. The appellants, under the circumstances disclosed by the bill and sworn answer, were not bound to offer evidence. To require them to do so would compel them to try their case *in limine.* They might rely on the presumption of the husband's ownership, so far as creditors' rights are concerned. In the language of the present president judge of this court, used in Mahle v. Kurtz et al., 6 Kulp, 157, " It is not our duty at this time to try the plaintiff's title and to declare whether it is good or bad, but simply to inquire whether there is such a dispute concerning it, as justifies the defendants in proceeding to test it in the usual way. We are unable to say that the defendants' answer does not raise a fair dispute."

If, however, we turn to the testimony of Shober and wife, it is by no means clear that the latter has made out her title. They both testify that, at the time of the assignment, Shober owed the wife (then Miss Derredinger) for wages, $975, secured by his note, and that this sum was paid the wife at sometime thereafter by Baumgardner. How she managed to get the full amount of her claim out of an estate which, admittedly, paid scarcely more than ten per cent of the indebtedness against it. is not explained by the evidence. In the printed argument of her counsel, it is conceded that the note was never presented to or passed upon by the auditor appointed to distribute the

balance shown by the assignee's account.   It is true, that, in the same connection, it is asserted that Baumgardner paid it because he had goods from some one, whose name is not disclosed, to use for that and another purpose; but this is not evidence.   Neither Baumgardner nor Mr. Nauman, the latter of whom, according to Shober's testimony, also knew about this matter, was called on to testify.   The husband further says, that the note was turned over to Baumgardner.   The wife states, in effect, that she destroyed it not long before she testified.   It may be that all these things can be easily explained before a jury, which is the proper tribunal to hear and decide them.   As it is, they need reconcilement and explanation.

In addition to the $975 just spoken of, Mrs. Shober testifies that when she was married she had about $375 in cash, being a part of her earnings, and that her grandmother, now dead, gave her $375; and Shober says that his aged and invalid mother, who is also dead, in January, 1885, when he told her of his approaching marriage to Miss Derredinger, began sending the latter, through him, sums of money, and inside of six or seven months, thereafter, had turned over to her prospective daughter-in-law $600, in gold and silver—the little savings of a lifetime.   We need express no opinion respecting the probability or improbability of the latter statement.   It, too, is one to be considered by a jury.

In the manner above mentioned, the Shobers account for the $2,295 that they allege the wife turned over to the husband with which to begin business for her in 1886.   The learned judge of the court below lays stress on the fact, that the evidence for the appellee was not contradicted.   It will be easily seen that the testimony relating to the gifts by the grandmother and mother-in-law of the appellee could only be assailed on the ground of alleged inherent improbability.   Very often a defrauded creditor has no other resource.   In Campe v. Horne et al., supra, the evidence in favor of the wife's title, under which the plaintiff claimed, was so strong and one-sided that the learned trial judge deemed it his duty to give binding instructions for the plaintiff.   The Supreme Court, in reversing the judgment, says that while there was abundance of proof in favor of the title being in the wife, and that the jury might well have found it to be good, yet it was the function of the jury to pass upon

the testimony. Let us suppose, for the purpose of illustration, that the Shobers had testified that the $2,295 had been received by the wife, by mail, from some benevolent person unwilling to disclose his identity, would a jury or a chancellor be compelled, in the light of all the circumstances, to accept the story as absolute verity, because no witness could be found to contradict it? As to the testimony relating to the payment of the $975 note, it contains elements of improbability to which we have already briefly called attention.

We are of the opinion that this case is not within the exception recognized in Hunter's Appeal, or any other decided case, and that therefore it was erroneous to grant the injunction.

The decree is reversed, the bill dismissed and the appellee directed to pay the costs.