## B. Berwald, by his next friend, A. H. Michaels, *v.* L. L. Ray, Sheriff, Appellant.

*Trespass for illegal sale by sheriff—Title to goods sold—Shifting burden of proof—Province of court and jury—Evidence.*

Where, in an action against the sheriff for an illegal sale, the plaintiff derives title from a judicial sale, the record of which is put in evidence, the burden of proof is then cast upon the sheriff, but when the goods in dispute, seized in defendant's possession, are not identical with those covered by such judicial sale the burden is cast upon the plaintiff to show that the actual goods, sold by the sheriff had been acquired in the course of a business carried on by the defendant in the execution as agent for

plaintiff and for his, plaintiff's, benefit. This involves a mixed question of law and fact which should be submitted to the jury with appropriate instructions, and facts and circumstances relevant thereto are admissible in evidence, but the validity of the judicial sale cannot be attacked in the proceedings against the sheriff.

*Question for jury—Presumption from exclusive possession—Credibility of witnesses.*

Prima facie presumption, arising from exclusive possession, by defendant in execution, of goods levied upon by sheriff must be overcome by affirmative evidence; and even though the witnesses of plaintiff, in an action of trespass against sheriff, testify to all facts necessary to establish his ownership, yet, as his case depends upon their credibility, the question must in general be submitted to the jury.

*Trespass—Wrongful sale by sheriff—Estoppel—Inference from exclusive possession—Burden of proof.*

Where the sheriff levies upon and sells the goods of B. upon an execution against R., the former may maintain an action of trespass without proof of other facts; to escape liability the sheriff must show that the real owner is estopped by some action of omission or commission; but where the goods were in the possession of the defendant in the execution, and the possession was apparently exclusive, the burden of proving ownership is, of course, cast upon the plaintiff in the action of trespass.

Argued May 16, 1898. Appeal, No. 9, April T., 1898, by defendant, from judgment of C. P. Venango Co., April T., 1892, No. 64, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY and PORTER, JJ. Reversed.

Trespass. Before CRISWELL, P. J.

It appears from the record that this was an action brought by the plaintiff against the sheriff to recover damages alleged to be due him by reason of a sheriff's sale under a writ against R. Berwald, the plaintiff's father.

Another phase of this case was before the Supreme Court and reported as Berwald v. Ray, 165 Pa. 192.

The facts sufficiently appear from the charge of the court below and the opinion of the court. The charge is as follows:

In the trial· and disposition of these controversies you together with the court, constitute a tribunal for their disposition. You have your duties to perform, and the presiding judge has his duties. It is your duty to determine the facts from the evidence. It is the duty of the judge to instruct

you as to the law. Sometimes the greater responsibility rests
upon the jury; sometimes upon the court. Usually and al-
ways the court prefers to let the responsibility rest upon the
jury rather than to assume it himself, but frequently the court
has not that privilege. He must assume the responsibility,
and a failure to do so on his part is an error, which would be
reversed by the Supreme Court, and lead the parties into addi-
tional costs and difficulties.

[After much consideration of the questions here involved,
we have come to some conclusions, somewhat at variance with
the positions of counsel on both sides. The result of our con-
clusions is that we should leave to you nothing but the deter-
mination of the question as to the amount of damages.] [1]
I will briefly give my reasons for so determining. It appears
that about July, 1889, R. Berwald was the owner of a stock
of goods, situated in a storeroom in Oil City. In this con-
nection we will say to you it does not make any difference
whether R. Berwald was Rachel Berwald, or whether it was
Rachel's husband, the gentleman who has been before you here.
There is no question but that the goods were owned by R.
Berwald, whoever R. Berwald was. A judgment was obtained
against R. Berwald in the court of common pleas of McKean
county. Upon that judgment an execution was issued and di-
rected to the sheriff of this county, and by virtue of it the
sheriff of this county levied upon the stock of goods in Oil
City, as the property of R. Berwald, and sold them. That sale
was a judicial sale. Sometimes such sales are fraudulent and
of no effect, but in order to reach that conclusion, a jury must
be satisfied by evidence which warrants the conclusion. There
has been no evidence offered here to warrant a jury in finding
that that sale was fraudulent. So far as the evidence goes, it
simply shows a judicial sale, by the sheriff of this county, of
the stock of goods then in that store, as the property of R.
Berwald.

It further appears that the goods were purchased by one A.
Marks. Under the evidence we say to you that A. Marks ob-
tained a good title to those goods. No one interested in this
proceeding is in position to question his title. [If L. & C.
Wise, the parties who made the last sale, upon whose execution
the last sale was made, had been at that time creditors of R.

Berwald, they would then be in position to question the regularity of the first sale; but R. Berwald was not indebted to them at that time; they had no interest in those goods then, no more interest than any of you jurors now have, and, being outsiders, you have no right to question it, and L. & C. Wise, being not interested, they have no right to question that original sale. They became interested, as appears from the evidence, in R. Berwald, and in the goods in his possession, after that sale. When they came upon the scene, according to the evidence, the stock of goods were owned by B. Berwald, that is, they had been transferred by A. Marks to B. Berwald.] [2] When they furnished stock to replenish that store, the goods then in the store, under the evidence were the property of B. Berwald.

[B. Berwald's father was in possession of the store, as alleged by the plaintiff here, acting as agent for his son. It is true that the father, after the sheriff's sale in 1889, might have become the owner of the goods, and if there was any evidence here upon the part of the defendant, tending to show, or showing that he did become the owner of those goods, and was the owner at the time of the last sheriff's sale, we would submit the question of ownership to you; but we know of no evidence in the case, and, as we recollect, there is none, showing that the father subsequently became the owner of those goods in that store. So the evidence leaves the matter in this situation; that the son obtained a title to the stock of goods from his uncle, A. Marks, and the business was conducted for the son, and in his name, by the father, from 1889 down until 1890, when the last seizure and sale was made. So under the evidence we say to you, as a matter of law, there is nothing to warrant you in finding that the goods did not belong to B. Berwald, the son.] [3]

Now, passing from that point, in 1890 it appears there was an attachment issued by L. &. C. Wise against R. Berwald and B. Berwald. By virtue of that attachment, which was directed to the sheriff, the sheriff went to Oil City and seized and impounded a lot of shoes then in this store. It appears that he took the shoes, placed them in boxes, or in a box, and retained them in his possession. That attachment was against R. Berwald and B. Berwald. Whether it was against Rachel Berwald

or the father we don't know, and I don't know as it is material. After having made the seizure upon that attachment, sometime afterwards a judgment was recovered against R. Berwald, but not against B. Berwald, the son. Judgment having been recovered against R. Berwald, an execution was issued on that judgment and delivered to the sheriff, and by virtue of that execution, the sheriff went and seized these goods again, which had been taken into his possession, levied upon them, advertised them, and sold them as the property of R. Berwald. B. Berwald now claims the goods levied upon and sold by that execution were not the property of R. Berwald, but were his property, and brings this action against the sheriff to recover the value of those goods.

Where an individual seizes the property of another, and converts it to his own use or sells it, he is liable to the party whose property he has taken. That is the general rule, applicable to all persons. Where he, without authority, takes the goods of another, and converts them to his own use, or sells them and takes the proceeds, he is liable to the owner of those goods for their value. The same rule applies to the sheriff. If, without authority, he seizes the goods of any person, he must answer for the value of those goods. If the sheriff receives an execution against John Smith, and by virtue, as he claims, of that execution, he levies upon the property of Sam Jones, he is liable to Sam Jones for the value of that property. That is the general rule. He has no authority to take the goods of Sam Jones and sell them, when he has an execution, not against Sam Jones, but against John Smith. So, in this case, the sheriff had an execution against R. Berwald. By virtue of that execution he had a right to sell and seize the property of R. Berwald; but if he seized and sold the goods of some other person, he is liable to that other person for the value of the goods unless he is protected in one of the ways which I will indicate to you.

As I have stated, the same rule applies to a sheriff as applies to any other person. When, however, a sheriff has, by virtue of an execution placed in his hands, seized the property of another, not the property of the defendant in the execution, under certain circumstances, the owner of that property has duties to perform, and the sheriff may escape the liability for

the value of those goods, and may have immunity in an action against him. [But the burden rests upon the sheriff to show he is not liable, if it appears he has taken the goods of another. In other words, the plaintiff here would have been bound in chief only to show that the property seized by the sheriff was not the property of R. Berwald, but was the property of B. Berwald, and that the sheriff seized and sold the property of B. Berwald, having no execution against B. Berwald authorizing him to do so. The plaintiff might have rested if he had shown that fact by the evidence. The sheriff, then, in answer to that allegation, might show that B. Berwald had done some act which estopped him from claiming those goods as his own. For instance, the sheriff might have shown that B. Berwald was present at the sale, and knew the sale was going on; that he made no claim to the goods, and that by reason of his having permitted the sale to go on, without any notice, he was now estopped from showing that those goods were his.] [4] The defense, in such case, rests upon the ground of estoppel, and the sheriff, in order to shield himself from liability for the value of the goods, must show the real owner did something to estop himself from claiming those goods. Now, it is upon that principle the sheriff is exempt if exempt at all.

[B. Berwald, it appears from the evidence, was a minor at the time he obtained those goods. According to the testimony of his mother, he was sixteen years of age. But if he had arrived at such years of discretion that he would be capable of forming an intent to be a party to a fraudulent act, he would still be estopped, notwithstanding the fact that he was a minor, if, in pursuance of that fraudulent intent, he did some act to mislead the sheriff, to the sheriff's injury. Taking all the evidence in this case, in view of the fact that the burden was upon the sheriff to show that B. Berwald had done some act by which he was estopped, we have concluded to say to you there is no evidence in this case which will warrant you in finding as a fact that B. Berwald did any act which will estop him from claiming those goods as his own.] [5] In reaching that conclusion, we take into consideration the fact, as appears from the record, that while the action was originally commenced against B. Berwald and R. Berwald, the son, B. Berwald, resisted the claim. The sheriff who executed that attachment is

the defendant now in court.   He seized those goods originally upon an attachment against R. Berwald and B. Berwald.   Having seized them and taken them into his possession, he retained possession for some time, and he then, upon an execution upon R. Berwald alone, advertised those goods and sold them.   B. Berwald was resisting the recovery of a judgment against him, and if you believe the evidence on the part of the plaintiff, he was insisting from the time of the levy until the time of the sale that those were his goods, and, if you believe the evidence on the part of the plaintiff, actual notice of that fact was given to the defendant, the sheriff here, before the sale.

[Whether such actual notice of claim was given or not, it is proven, and there is no controversy as to this, that the sheriff had notice that there might be trouble as to those goods.   He testifies that Mr. Breene informed him that there would probably be trouble as to those goods, and, while he does not agree with Mr. Breene as to all that was said, he does agree that there was conversation before the sale in reference to the possibility of trouble. There is no evidence to show that any other person was claiming the goods here.   In view of that talk, we think it is reasonable to conclude that the sheriff concluded it was necessary for his own protection to have indemnity against the claim of B. Berwald, and the sheriff, it appears, secured a bond of indemnity.   The sheriff says he procured the bond.   He has testified to you of that fact, and while some of the parties may have testified that the bond was not delivered, we do not think that is a material question here, so long as the sheriff says he was indemnified by a bond.] [6]

Taking all these facts into consideration, the fact that the young man by his attorney, I think it is conceded that Mr. Breene was acting as his attorney, was not only warning the sheriff before the sale, but on the day of the sale was present before the sale commenced and was giving notice to bidders that those goods were the property of B. Bernald, taking all of these things into consideration, we are unable to discover any proof of any conduct on the part of B. Berwald, or any representations made by him, that would warrant you in finding that the sheriff was mislead by what he did, to his injury; and unless he did some act which mislead the sheriff, to the sheriff's injury, the sheriff is not protected in selling his goods.

Now, having that view of the law, gentlemen, we say to you that there remains nothing for you to determine except the value of the goods taken, and that under the evidence the plaintiff is entitled to recover the value of the goods belonging to B. Berwald, seized and sold by the sheriff. That is a question of fact to be determined by you. The father of the plaintiff, and the plaintiff's brother have testified as to the value of the goods. The defendant has told you that he did not have sufficient knowledge of the market value of that kind of goods to be able to accurately state what their value was. You have the testimony, however, of Mr. John T. Hardcastle, who says that he is a traveling salesman, boot and shoe man, and who testifies he was there at the store weekly or about so; that he sufficiently examined the goods, and had, to some extent, a knowledge of the goods and of their character. Inasmuch as he did not know the goods which were set apart by the sheriff, we did not think it was proper to allow him to testify as to the value of the goods there generally. The evidence would be too uncertain for you to fix the value of the goods taken by the sheriff. The father testified, however, that the greater part of the goods taken, and seized by the sheriff, were of the manufacture of Holland & Eagan, and there were 433 pairs taken. Mr. Hardcastle testified that about a week before the sale he was in the store, that he to some extent examined the stock, and that there were not that many pairs of shoes there of the make of Holland & Eagan, and, according to his recollection, the number of that make did not exceed six or seven dozen.

Now, there is that evidence on the question of value, in addition to the evidence on the part of the plaintiff. The question of value is a question to be determined by you. You have a right to determine which of these parties are telling the truth, to determine to which one of these you will give the credit. If you believe the testimony of Mr. Hardcastle, why then there was not the number of pairs of shoes there of the make of Holland & Eagan that was represented. On the part of the plaintiff, you have the testimony of Mr. Berwald, the father, the testimony of his son, and also the testimony of Mr. Krinski as to the value.

[Now, you will consider all the evidence relating to value, and determine what amount of damages the plaintiff is en-

titled to recover.   The plaintiff is entitled to recover the market value of the goods seized and taken by the sheriff, belonging to B. Berwald, and in determining the amount, you may take into consideration the lapse of time which has occurred since the seizure of those goods up until the present time.   I believe the seizure was in July, 1889.   I believe that is all we have to say to you, gentlemen.   The burden is upon the plaintiff to satisfy you as to the value of those goods.] [7]

Counsel for defendant take a general exception to the charge of the court, and on their request a bill of exceptions is sealed.

Verdict and judgment for plaintiff for $747.28.   Defendant appealed.

*Errors assigned* were (1–7) to portions of the judge's charge, reciting same.   (8) In sustaining the following offer of evidence on the part of the plaintiff and overruling the objection of the defendant thereto.   Said offer and the objection and the ruling of the court being as follows : " Plaintiff offers in evidence that portion of the defendant's testimony, given by him upon a former trial of this case, to which his attention has now been directed.   Objected to by counsel for defendant for the reason that the questions have been repeated to him seriatim, and he has admitted he answered them in the way the records state, and has added thereto his explanation of the meaning, and therefore the testimony is no contradiction, and is incompetent for any other purpose."   (9) In its ruling upon the following offer of evidence on the part of the defendant, said offer and the objection and the ruling of the court being as follows : " The defendant proposes to prove by this witness and others that prior to the sale mentioned by the plaintiff on a testatum fi. fa. from McKean county on July 15, 1889, one R. Berwald, the father of B. Berwald, was in possession of a stock of goods and business in Oil City ; that he did all the purchasing for the business, giving all orders, giving his own obligations for the same, and in every particular managing and conducting the business ; that on the 3d day of July, 1889, on two judgment notes signed by him, payable to A. Marks, his brother-in-law, at Bradford, judgment was confessed, and a testatum fi. fa. issued to Venango county, and the goods in the store of this R. Berwald were sold by the sheriff of Venango county

as the goods of Rachel Berwald, the wife of R. Berwald; that all the goods were purchased by A. Marks, his brother-in-law excepting nearly enough to cover costs of the proceeding from McKean county; that the balance of the costs were made up by retail sales by one H. J. Humes who was then acting as attorney for A. Marks and R. Berwald, and who receipted for all the balance of the goods in the store and left them there in the possession of R. Berwald, the father, who from that time forward conducted the business as he had before the sale, buying on his own account, and representing himself as the owner of the store; and that after the sale from McKean county R. Berwald, the father, said that Humes had fixed the matter so the creditors couldn't get a cent.    Offer objected to by counsel for plaintiff on the ground that it is incompetent, irrelevant and immaterial to this issue, and on the further ground that the offer is to contradict the record of the judgment of McKean county against R. Berwald, and of the record of the proceedings of the attorney upon the writ upon which the goods were sold, as shown by his return, and on the further ground that the parties on whose behalf this offer is made, L. & C. Wise, have no standing to question the validity of the sale on the judgment on the writ from McKean county, they not being creditors of either of the Berwalds at that time.    By the Court: We will permit the defendant to show that the goods levied upon were at the time of the levy the property of R. Berwald, but unless the defendant will further show that L. & C. Wise were creditors of R. Berwald at the time of the sheriff's sale referred to in 1890, we will sustain the objection to all evidence attacking the sheriff's sale."    (10) In overruling the following question propounded by defendants's counsel to the witness, J. T. Hardcastle, and sustaining the objection of the plaintiff thereto. Said question, objection and ruling of the court being as follows: "Q. What was the character of that stock? Objected to by counsel for plaintiff.    Objection sustained by the Court." (11) In overruling the following question asked by defendant's counsel of the witness, J. T. Hardcastle, and sustaining the objection of defendant thereto.    Said question, objection and the ruling of the court being as follows: "Q. Mr. Hardcastle, did you hear the testimony of Berwald that such shoes as were taken by Ray would sell at wholesale from $3.60 to

$3.90 a pair? A. I did. Q. You may state whether or not from your inspection of the stock of B. Berwald he had any such shoes? Objected to by counsel for plaintiff. Objection sustained by the court." (12) In overruling the following offer of evidence by defendant and sustaining the objection of the plaintiff thereto. Said offer, objection and ruling of the court being as follows: " R. Berwald being on the witness stand the defendant made the following offer: Defendant offers to identify by the witness a large number of bills of goods which were shipped to and received by the business of Berwald in Oil City, such bills to be afterwards offered in evidence for the purpose of showing the value of the stock from which the goods were taken that were afterwards sold by Sheriff Ray, and that for the purpose of contradicting the witness, who testified that his stock was of first quality and of greater value than is shown by the bills. Objected to by counsel for plaintiff. By the Court: The offer is overruled in so far as it is an offer to contradict the witness, and the objection is sustained." (13) In overruling the offer of defendant of the wrapper identified by the witness, Isaac Ash, Esq., and sustaining the objection of the plaintiff thereto. Said offer and the objection and the ruling of the court being as follows: " Defendant offers in evidence the wrapper identified by witness, for the purpose of showing that R. Berwald whose name appears on the wrapper, was carrying on the business. This as to the question of notice. Objected to by counsel for plaintiff as irrelevant and immaterial. Objection sustained by the court.

*F. W. Hays*, with him *R. F. Glenn*, for appellant.—The court below withdrew all questions from the consideration of the jury except the amount of damages.

Under the circumstances two other questions should have been submitted: First, the question of the ownership of B. Berwald in the goods; and second, that of notice to the sheriff of such ownership.

It is well settled law, that where a case depends upon oral testimony, such testimony must be submitted to a jury: Shober v. Harrison, 3 Pa. Superior Ct. 188; Kircher v. Sprenger, 4 Pa. Superior Ct. 38; Lautner v. Kann, 184 Pa. 334. The inherent improbability of the story of a witness may discredit

his testimony and justify a jury in disregarding it: Lautner v. Kann, supra; Shober v. Harrison, supra; Kircher v. Sprenger, supra.

It being the undisputed testimony on both sides that the apparent ownership was in the father, " R." or " L. R." Berwald, the onus of establishing title in the son was on him: Hannum v. Pownall, 182 Pa. 587.

Transactions between members of a family are closely scrutinized by the courts: 8 Am. & Eng. Ency. of Law (1st ed.), 765; Hirsch v. Wenger, 182 Pa. 246.

To render the sheriff liable, as a trespasser for levying on the goods of a stranger, the latter, if he knows of the levy, should give notice of his claim to the goods : Helfrich v. Stem, 17 Pa. 143.

Having deliberately invested his father with apparent ownership, he was estopped from claiming the goods as his own, unless he showed that he had given the sheriff notice thereof. This he attempted to do by the testimony of his father, " R." or " L. R." Berwald, and his attorney, Mr. Breene. But their testimony was flatly contradicted by the defendant and others.

*J. H. Osmer,* with him *W. J. Breene,* for appellee.—The facts present simply the case of goods belonging to B., taken by the sheriff on a writ against R.: 9 Bacon's Abridgement, 477, and cases cited.

A mere levy upon personal property, where it is not authorized by law, is a trespass: Connah v. Hale, 23 Wend. (N. Y.) 462.

OPINION BY RICE, P. J., October 10, 1898 :

This was an action of trespass, brought by B. Berwald against the sheriff, for the sale of a stock of merchandise, on a fi. fa. issued by L. & C. Wise against R. Berwald, the plaintiff's father. It is urged, that the court erred in not submitting the questions as to the plaintiff's ownership, and notice to the sheriff, to the jury. The assignments of error relating to these matters require a review of the testimony, at some length.

The plaintiff alleges, that prior to July, 1889, his mother, whose name is Rachel, was the owner of a retail shoe business in Oil City, conducted in the name of " R. Berwald " by her husband L. R. or R. Berwald. The merchandise in this store

was seized under a testatum fi. fa. issued on a judgment against
"R. Berwald," and the sheriff returned, that on July 15, 1889,
he sold the same "to sundry parties, which will fully appear by
reference to sheriff's sale book No. 4." This book was pro-
duced on the trial and showed that, for the most part, the goods
were bid in by the attorney who issued the writ. According
to his undisputed testimony he was acting for A. Marks, the
legal plaintiff in the judgment. The latter, by bill of sale dated
August 3, 1889, transferred his title to B. Berwald, the plain-
tiff in this suit.

The plaintiff did not offer himself as a witness but his mother
testified that about five years before this sale her mother had
given to her brother, A. Marks, between $2,600 and $3,000 for
her son Benjamin, the plaintiff; that out of this sum he took
his pay for the goods transferred to Benjamin by the bill of
sale; and that with what remained, $1,120, she bought for her
son an additional stock of goods, which were put in the store.

At the time of these transactions, Benjamin was sixteen or
seventeen years of age and was learning the barber's trade; at
which he continued to work until the time of the trial. His
father, L. R. or "R. Berwald"—as he sometimes signed his
name—continued in possession of the shoe store, and conducted
the business in substantially the same manner as before the
sheriff's sale.

In the following year he bought goods of L. & C. Wise in
the name of B. Berwald, and to secure credit gave his continu-
ing guarantee of an indebtedness not exceeding the sum of $300.

In December, 1890, L. & C. Wise commenced suit for indebt-
edness thus incurred, against R. Berwald and B. Berwald, by
an attachment under the act of 1869; goods in the store were
taken possession of and removed by the sheriff; and on June 23,
1891, a rule for judgment for want of a sufficient affidavit of
defense was made absolute as against R. Berwald for the sum
of $300, and discharged as to B. Berwald. A fi. fa. was issued,
by virtue of which the sheriff levied upon, and sold, the goods
in his hands under the attachment. B. Berwald then brought
this action of trespass.

The learned judge correctly held, that where the sheriff
levies upon and sells the goods of B. upon an execution against
R. the former may maintain an action of trespass without proof

of other facts; to escape liability the sheriff must show that the real owner was estopped by some act of omission or commission. We also think he committed no error in instructing the jury that there was no evidence in the case which would warrant the jury in finding that the plaintiff was estopped from claiming these goods as his own, and maintaining the action, if in truth he was the owner. The reasons for this conclusion as applied to the special facts of the case are sufficiently stated in the charge and need not be elaborated. The fourth, fifth and sixth assignments are overruled.

But where the goods were in the possession of the defendant in the execution, and that possession was apparently exclusive, the burden of proving ownership is, of course, cast on the plaintiff in the action of trespass. He must overcome the prima facie presumption arising from the possession by affirmative evidence; and even though his witnesses testify to all the facts necessary to establish his ownership, yet, as his case depends upon their credibility, the question must in general be submitted to the jury: Lautner v. Kann, 184 Pa. 334; Grambs v. Lynch, 4 Penny. 243; Shober v. Harrison, 3 Pa. Superior Ct. 188, 195; Kircher v. Sprenger, 4 Pa. Superior Ct. 38. Where, however, he derives title from a judicial sale, the record of which is put in evidence, the burden is then cast on the sheriff. If, therefore, the action had been for the sale of the goods bought by A. Marks at the sheriff's sale in July, 1889, no person connected with this case would be in a position to dispute his title or the validity of his transfer to the plaintiff. Marks might have made a valid gift of the property to the plaintiff; hence so far as the latter's title thereto was concerned it was not necessary to prove the consideration for the transfer. It was sufficient to show, as against persons who became creditors of R. Berwald afterwards, that there was a legal transfer—whether by gift or otherwise was immaterial—from Marks to the plaintiff.

It is to be observed, however, that there was no attempt to show that the goods levied upon under the L. & C. Wise writ were the identical goods bought by Marks at the sheriff's sale in 1889, and by him transferred to the plaintiff. The plaintiff's contention was, that with these goods and the $1,120 worth of goods referred to in his mother's testimony, his father opened and carried on the business as his (the plaintiff's) agent, and

for his benefit; and that the goods levied upon had been acquired in the business thus carried on. Assuming these facts, the goods were not liable to seizure under this execution. But were they the facts? They were not admitted by the defendant, nor was he estopped to demand affirmative proof of them. They rested in parol, and although there was no contradictory testimony of a direct nature, there was circumstantial evidence which had a tendency to weaken the probability of the plaintiff's allegations, and as the burden of proving that R. Berwald was acting simply as agent or trustee rested on the plaintiff, the defendant had a right to have the questions of fact submitted to, and decided by, the constitutional tribunal. It is not within our province to comment on the credibility of the testimony of the plaintiff's father and mother; it is sufficient for us to say that in view of all the attendant circumstances— to say nothing of the extraordinary nature of some of the statements—the jury were not bound to accept it as absolute verity. It was for the jury to determine what credit was to be given to it. The controlling question, therefore, was not, whether the alleged transactions were fraudulent per se as to creditors but whether the facts were as alleged by the plaintiff. Was the actual beneficial ownership of the goods levied upon in B. Berwald or was it in R. Berwald? This was a mixed question of law and fact and should have been submitted to the jury with appropriate instructions. The first, third, seventh and thirteenth assignments are sustained.

The second and ninth assignments are overruled. Many of the facts and circumstances referred to in the last mentioned assignment would have been relevant to the question we have just stated, and the ruling as explained by the learned judge did not prevent the defendant from proving them for that purpose. We think he was right, however, in holding that the validity of the sheriff's sale under the testatum fi. fa. could not be attacked in this suit.

L. R. Berwald testified that 433 pairs of shoes were seized; that their cost price was over $1,100; that they were "a fine make of shoes; Rochester make and a good many other makes;" that "some cost $3.60, some $3.50, $3.18, and so on;" that the stock in the store "were all fine new goods." In view of this testimony it was competent for the defendant to ask a witness

who was in the same business, who knew the market prices and who had inspected the stock but a week before, whether the stock was as described by Berwald and whether he had any such shoes as he testified were seized by the sheriff.

Probably no great injury was caused by the rejection of these offers as in the latter part of his examination greater latitute was allowed, but as the case goes back for a new trial it is proper to say that the evidence was admissible.   The tenth and eleventh assignments are sustained.

If the defendant had offered to produce all the bills, the offer referred to in the twelfth assignment might have been competent for the purpose stated.   But a part of the bills might show that the shoes referred to in them did not cost what the witness said these shoes cost without necessarily contradicting him.   There was no error in rejecting this offer and the assignment is overruled.

The judgment is reversed and a venire facias de novo awarded.