# Brackin et al. v. Welton Engineering Co., Appellant.

*Equity—Jurisdiction—Injunction—Levying on interest in land —Evidence—Ejectment.*

1. Unless it be averred and proved a defendant is simply using the process of the law to harass or annoy plaintiff, a court of equity does not have jurisdiction, at the instance of plaintiff, who alleges he owns the land, to enjoin defendant from levying on and selling a supposed interest of his judgment debtor in it, unless the controlling facts on which the plaintiffs in equity relies are proved by matters of record, or by undisputed writings, or are admitted.

2. On the trial of an ejectment brought by the purchaser at a sheriff's sale, following the dismissal of such equity proceedings, the whole field of inquiry will be open exactly as if no such proceedings had been begun.

*Contract—Forfeiture — Time essence of contract — Waiver — Ejectment—Conditional verdict—Equity.*

3. Where an agreement provides that one of the parties to it may declare it null and void if specified quantities of work are not done under it during stated periods, and time is made the essence of the contract, the latter provision will be considered waived if, with knowledge of the fact, work is permitted to be continued after the periods stated.

4. The rule is particularly applicable where the contract provides that a forfeiture may be declared for any default, however trivial.

5. In such cases equity must be accorded to both parties, and this may be accomplished, if the case justifies it, by a conditional verdict in the action of ejectment brought by the purchaser at the sheriff's sale.

Argued March 16, 1925. Appeal, No. 17, March T., 1925, by defendant, from decree of C. P. Mercer Co., Jan. T., 1924, No. 2, on bill in equity, in case of James C. Brackin et al. v. P. E. Welton Engineering Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Bill for injunction to restrain sale of real estate on execution. Before McLAUGHRY, P. J.

The opinion of the Supreme Court states the facts.

Decree for plaintiffs. Defendant appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Geo. H. Rowley,* of *Templeton, Whiteman, Rowley & Gilkey,* for appellant.—There being evidence of a waiver of the provision of the contract making time of the essence thereof, all expenditures made by the purchaser of the lands in question must be considered in determining the rights of the respective parties to the agreement.

*W. C. Pettit,* with him *Guy Thorne,* for appellee.—It was the plain duty of the court to stay the execution and prevent a sale which could do nothing but place a cloud upon the title and thereby cause great hardship and irreparable injury to plaintiffs: Gay v. Chambers, 37 Pa. Superior Ct. 41; Barrell v. Adams, 26 Pa. Superior Ct. 641; Anton v. Secrist, 54 Pa. Superior Ct. 337, 346; Natalie Coal Co. v. Ryon, 188 Pa. 138; Kreamer v. Fleming, 200 Pa. 414; American Trust Co. v. Kaufman, 276 Pa. 35.

OPINION BY MR. JUSTICE SIMPSON, April 13, 1925 :

Defendant appeals from a final decree in equity, enjoining it from proceeding further with an execution against certain land in which it avers its judgment debtor, the Shenango Tire and Rubber Company, had an interest.

Plaintiffs, being the owners of a large tract of land, entered into a written agreement with the Rubber Company, by which they agreed to deliver to it possession of part of the property, to be followed by a deed, if the company did "all the things agreed to be performed by it on or before April 1, 1921," in consideration whereof, it in turn agreed to "expend [on the land to be conveyed] for buildings and other improvements,......on or before July 1, 1920, $10,000; on or before October 1, 1920, $15,000 more; on or before January 1, 1921, $12,-500 more; on or before April 1, 1921, $37,500 more..... on checks or vouchers countersigned by Guy Thorne, Esq., [whose] certificates as to said moneys having been paid out, or not having been paid out, for the purposes above specified, shall be final and conclusive on all parties hereto." The agreement further provided that "time is of the essence of the agreement and failure of [the Rubber Company] to perform any of the things above specified to be performed by it on or before the dates mentioned, shall render this agreement null and void," in which event, at the option of plaintiffs, an amicable action and judgment in ejectment might be entered, and possession of the land retaken.

The agreement does not appear to have been recorded, but the Rubber Company entered into possession of the property and commenced the erection of the specified "buildings and other improvements." The value of the work done and materials used in making those improvements is not shown, but, admittedly, the Rubber Company actually paid therefor at least $50,186.41, and defendant recovered a judgment for $7,230.21, for additional work done and materials furnished by the Akron

Engineering Company, whose assets were taken over and liabilities assumed by defendant. The latter also claims that more than the $75,000 specified in the agreement was expended "for buildings and other improvements," but, if so, the evidence in this case does not prove it. According to plaintiff's testimony, the Rubber Company did not make the expenditures called for in the agreement, by the dates set forth in any of the respective installments: nevertheless, though knowing the work was still going on, as in fact it was for some seventeen months after April 1, 1921, and that the Akron Engineering Company, under its contract with the Rubber Company, was, during all that time, improving the property, plaintiff did not declare the "agreement null and void," nor attempt to retake possession of the land and improvements.

After the Rubber Company ceased to proceed with the work, defendant sued it and recovered the judgment for $7,230.21 above referred to, issued a fi. fa. thereon, had the property levied on and condemned, and followed this with a vend. ex. to have it sold. Not until after that occurred, did plaintiffs act. They then obtained from Mr. Thorne the character of certificate specified in the agreement; without notice to any party interested, they caused an amicable action and judgment in ejectment to be entered against the Rubber Company, and, by virtue of a writ of habere facias possessionem, obtained possession of the property. They then filed the bill in equity in this case, defendant answered, and the case was tried, resulting, as stated, in a decree perpetually enjoining it from selling the property under its judgment.

The basis of the court's decision is that although a court of equity will not ordinarily stay an execution against real estate, at the behest of a third party, who claims to be the real owner of the property, but will leave him to contest, in other and later proceedings, the title obtained by the purchaser at the sheriff's sale; yet

"the courts have been growing more liberal in this matter, and recognize that it is not right to compel parties to undergo the expense and delay of an action of ejectment, when it is clear that there is no question as to the title." Starting with the admission above made, in which appellees concur, let us see whether or not there has been a weakening of the rule,—premising our consideration with the statement that this record discloses nothing to justify a belief that defendant is using the process of the law to harass or annoy plaintiffs, or that it has any other motive than a desire to realize the amount of its claim.

In Hunter's App., 40 Pa. 194, a husband's creditor attempted to sell the property of a wife, admittedly obtained by her under the will of her mother, perhaps on the theory that the old law, which gave her property to him, was not altogether abrogated by the Acts of April 11, 1848, P. L. 536, and April 22, 1850, P. L. 549. The court below refused to enjoin the sale, but we reversed because she had a clear title, devised to her by her mother, which could not be sold for her husband's debts, since the above statutes expressly forbade it. We were careful to say, however (pages 196-7) : "It may and ought to be conceded, that it has been the constant practice in this Commonwealth, for a creditor to seize in execution any property which he may believe his debtor has an interest in, and sell it in satisfaction of his debt. It is an axiom of our law, that, in some form or other, all property of a debtor not expressly exempt, is liable to be taken in satisfaction of his debts. Upon this principle, wherever an interest is alleged, the execution is allowed to go, and the question of interest is afterwards tried on the title obtained at the sale......True, the practice does often put the real owner to the trouble and expense of defending against a title so obtained, and of showing that the debtor had no interest whatever in the property sold. The cloud upon his title is often doubtless an injury; but notwithstanding this, the doctrine that the creditor has a right to seize and sell

his debtor's interest in property, whatever it may be, has been so firmly fixed, that the courts have not been armed with power to interfere in limine......With this practice it is not intended to interfere in this decision."

In Winch's App., 61 Pa. 424, a sheriff's sale was had, but title had not yet been taken, and the court below restrained further proceedings by the judgment creditor, who was also purchaser at the sale. We reversed, and said Hunter's App., supra, was so decided, because "there the exclusive ownership of Mrs. Hunter in her own right was not denied by plea, answer or demurrer," and we added that "the jurisdiction given to a court of equity for the prevention or restraint of the commission of acts contrary to law and prejudicial to the rights of individuals, was never intended to be used to obstruct the collection of debts,......[to permit this, save in extraordinary cases] would lead to a constant use of the powers of equity to hinder and delay the collection of honest claims, and to prevent the creditor from reaching the marrow of a fraud."

In Taylor's App., 93 Pa. 21, we reversed the court below for awarding an injunction, saying at page 24: "As a general rule, it has been the practice in this State, for a judgment creditor to seize and sell in satisfaction of his debt any real estate in which his debtor has or is believed to have an interest. Whenever such interest is alleged, the creditor is permitted to proceed with his execution; and if there be any question in regard to title, it may be raised and determined afterwards in an action of ejectment. The reason why the creditors' execution will not be enjoined in such cases is that, to do so would in effect withdraw, from the consideration of a jury, facts which properly should be decided by them."

In Davis v. Michener, 106 Pa. 395, an alleged purchaser at a judicial sale, made by direction of the court free of liens and debts, obtained from the court below an order preventing one of the lien creditors from selling the property under his judgment. We reversed, say-

ing (pages 397-8) : "Any interest, or supposed interest, of a defendant in lands may be sold by a judgment creditor, and its validity tested by ejectment; if the law were otherwise, its effect would be to abridge the right of trial by jury......In an ejectment neither party can be limited to what is therein stated [i. e. in the prior proceedings], the whole field of inquiry will be open, and the proper tribunal in place for their adjudication."

In Artman v. Giles, 155 Pa. 409, 416, it is said that "the only exception [to the general rule] so far recognized is in the case of a levy upon a wife's separate property for a debt of the husband"; which, as shown above, and specifically stated in Walker's App., 112 Pa. 579, was because of the statutory provisions of the Married Women's Property Acts.

In Pairpoint Manufacturing Co. v. Phila. Optical & Watch Co., 161 Pa. 17, we reversed the court below for decreeing that an execution should be stayed, though it appeared defendant's property was in the hands of a receiver, and could be more advantageously sold by the receiver in the interest of all the creditors. The same conclusion was reached in Hogsett v. Thompson, 258 Pa. 85.

In Natalie Anthracite Coal Co. v. Ryon, 188 Pa. 138, an injunction was granted, because the title held by plaintiff was admittedly obtained by the active participation of defendant, and hence he was estopped from contesting it. The general rule was again stated and approved, however.

In Kreamer v. Fleming, 200 Pa. 414, while regret was expressed as to the limitations on a court of equity in this class of cases, nevertheless we sustained the action of the court below allowing an execution to proceed, saying to appellee that "if he has any equities......they can be shown in defense of his title when it is directly attacked in ejectment."

In Mantz v. Kistler, 221 Pa. 142, the real question was as to whether or not plaintiff and defendant in the

execution were the same person. We said: "The remedy in equity as administered in some jurisdictions, notably our neighboring state of New Jersey, is very much superior. .There the rights of parties are fought out and adjusted in advance of a sale, so that every claimant or outside purchaser may bid at the sale with exact knowledge of what title will pass, and what disposition will be made of the proceeds. But the other practice has been long established here and is only departed from in very clear cases: Hunter's App., 40 Pa. 194; Winch's App., 61 Pa. 424; Kreamer v. Fleming, 200 Pa. 414."

In American Trust Co. v. Kaufman, 276 Pa. 35, where it was sought to set aside a foreign attachment of a property alleged to be the wife's, on a judgment recovered against the husband in another state, many of the above cases were considered and the general rule was again reiterated.

From this rather extended review of our cases,—made necessary by the above-quoted statement from the opinion of the court below,—it is clear we have steadily maintained the same position throughout. The true principle is that equity has no jurisdiction unless the controlling facts are proved by matters of record, or by undisputed writings, or are admitted. In the instant case, since no such situation appears, the decree below was erroneous. True, the record does not disclose the expenditure of the $75,000 for the purpose stated, but even this defect may be cured at the ejectment trial, when, as quoted from Davis v. Michener, supra, "the whole field of inquiry will be open." It may then be shown that the amount stated was in fact expended on the property "for buildings or other improvements," not necessarily paid for by the Rubber Company, but expended by it and others under contract with it. At that time the certificate of Mr. Thorne will not be controlling as against defendant, or the purchaser at the sale, for, as already stated, the former had levied on and condemned the property before the certificate was given

and while the Rubber Company was still in possession.

Moreover, even if the proofs fail to show an expenditure of the $75,000 "for buildings or other improvements," there will still remain a matter to be considered. While plaintiffs, under the agreement quoted, had the right to declare it null and void, if the expenditures were not made by the dates specified, they did not do this, but stood still, knowing the work was being carried forward by the Akron Engineering Company, defendants' assignor. This was, at least as to that company, a clear waiver of the provision making "time......of the essence of the agreement" (Welsh v. Dick, 236 Pa. 155), and thus the matter stood when the property was levied on and condemned under defendant's judgment. At that time the Rubber Company had an interest in the land, for no steps had been taken to dispossess it. It must not be forgotten, too, that the right to retake possession was for "any" failure, however trivial, to comply with the terms of the agreement "on or before the dates mentioned" in it. A right of forfeiture so based is highly penal in its nature (see Gross v. Exeter Machine Works, Inc., 277 Pa. 363) and hence will not be enforced in a court of equity, —whose jurisdiction plaintiffs now invoke,—except upon equitable principles. Surely it needs no argument to show that, under the facts here appearing, it would be inequitable to permit them to summarily take and keep possession of improvements costing not less than $57,-416.62 of the $75,000 required to be expended; some of which were incurred by defendant, with plaintiff's knowledge, after the time when, under the contract, they could have declared the forfeiture now relied on. It does not follow, however, that in granting equitable relief to defendant, inequity will be visited on plaintiffs. They may still be entitled to have the full amount of $75,000 expended for "buildings or other improvements," within a reasonable time, which result may be secured by a conditional verdict, the ejectment by the purchaser at the sheriff's sale being an equitable

one.   We abstain, however, from a fuller consideration of the questions arising on this branch of the case, since the facts, as developed at the trial between plaintiffs and such purchaser, may be essentially different from those appearing in the present record; but we may add that plaintiffs will have an adequate remedy at law to bring that controversy to an early decision: Heller v. Fishman, 278 Pa. 328.

The conclusion above stated obviates the necessity for considering the other defects alleged against plaintiffs' right to the relief sought.

The decree of the court below is reversed and the bill in equity is dismissed at the costs of appellees.