## Stine v. McVeytown National Bank et al.

*Paul S. Lehman,* for plaintiff; *Harry L. Siegel,* for defendants.

UTTLEY, P. J., October 29, 1934.—The complainant, Ella M. Stine, on October 5, 1934, filed the bill in equity in this case, praying, inter alia, for an injunction restraining Charles C. Duck, Sheriff of Mifflin County, and McVeytown National Bank from selling at sheriff's sale certain real estate, described in the bill and alleged therein to be owned by the complainant, on alias writ of fi. fa., no. 5, October term, 1934, issued upon judgment of McVeytown National Bank against D. R. Stine, J. F. Stine, and C. W. Stine, no. 40, May term, 1928, staying any further proceedings thereon, and restraining the said Charles C. Duck, Sheriff of Mifflin County, and McVeytown National Bank from selling said real estate on any writ of fi. fa. that may be hereafter issued upon judgment of McVeytown National Bank against D. R. Stine, J. F. Stine, and C. W. Stine, to no. 38, May term, 1928.

Upon presentation of the bill in equity, injunction affidavits, and bond to this court, a preliminary injunction was granted, pursuant to the prayer of the bill, to be dissolved, unless a motion to continue the same be made and heard before the court on October 15, 1934, at which time the motion to continue the injunction was made and testimony and arguments heard thereon. The question whether the preliminary injunction shall be continued is therefore now before us for determination.

The only contention of the complainant here is that the judgment to no. 40, May term, 1928, upon which the writ of fi. fa. above mentioned was issued and the judgment to no. 38, May term, 1928, were not at the time said writ was issued and are not now liens upon the real estate in question, because Ella M. Stine, the terre-tenant of said real estate, was not made a party to the amicable revivals, nos. 16 and 15, January term, 1933, respectively, of said judgments.

It is admitted in the bill that D. R. Stine was the owner of this real estate on January 23, 1928, when the judgments of McVeytown National Bank, to no. 40, May term, 1928, for $3,000, and no. 38, May term, 1928, for $2,000, were entered against him and J. F. Stine and C. W. Stine. This real estate would therefore continue to be bound by the lien of these judgments for the period of 5 years from their entry or until January 23, 1933.

D. R. Stine and Ella M. Stine, his wife, by deed dated November 23, 1929, sold and conveyed this real estate to Earl C. Stine, their son, a single man, who by deed bearing even date reconveyed the same to David R. Stine and Ella M. Stine, his wife. Both these deeds were recorded November 29, 1929. D. R. Stine died December 6, 1931, when title to the real estate in question vested in Ella M. Stine, as surviving joint tenant.

On January 12, 1933, an amicable sci. fa. to revive judgment, to no. 40, May term, 1928, was signed by J. F. Stine and C. W. Stine, and entered to no. 16, May term, 1933, and on the same date an amicable sci. fa. to revive judgment, to no. 38, May term, 1928, was signed by J. F. Stine and C. W. Stine and entered to no. 15, May term, 1933, in the Court of Common Pleas of Mifflin County.

McVeytown National Bank on July 9, 1934, filed and entered in the record of judgment to no. 40, May term, 1928, its suggestion of the death of D. R. Stine, on December 6, 1931, and issued a writ of fi. fa. on said judgment to no. 15, August term, 1934, against D. R. Stine, with notice to Ella M. Stine, terre-tenant, and on September 7, 1934, issued an alias writ of fi. fa. on said judgment to no. 5, October term, 1934, against D. R. Stine, with notice to Ella M. Stine, terre-tenant. On the alias writ of fi. fa. above mentioned, the real estate in question was levied upon and advertised to be sold on October 5, 1934, when the preliminary injunction was issued.

There can be no question that these two judgments were, at the death of D. R. Stine, liens upon the real estate described in the bill, as the death of D. R. Stine occurred within 5 years from January 23, 1928, when the judgments were originally entered. The only question really raised in this case, therefore, is whether the death of D. R. Stine on December 6, 1931, when said judgments were liens upon the real estate described in the bill and owned by him, extended and continued the lien thereof and, if so, for what period.

The Fiduciaries Act of June 7, 1917, P. L. 447, sec. 15 (g), provides as follows: "All judgments which at the time of the death of a decedent shall be liens on real estate owned by said decedent at the time of his death, or on real estate which shall have been conveyed by deed not duly recorded during his lifetime, shall continue to bind such real estate during the term of five years from his death, although such judgments be not revived by scire facias or otherwise after his death."

The Act of April 16, 1849, P. L. 663, sec. 8, provides: "In all cases when a judgment has been or shall be regularly revived between the original parties, the period of five years during which the lien of the judgment continues, shall only commence to run in favor of the terre tenant, from the time that he or she has placed their deed on record: *Provided,* That this act shall not apply . . .

when the terre tenant is in actual possession of the land bound by such judgment, by himself or tenant."

The Act of 1849 is not repealed by the Fiduciaries Act and is still in force. It applies to a judgment regularly revived between the original parties. The continuance of the lien of a judgment, by the death of a decedent, against the real estate owned by him at his death or real estate which shall have been conveyed by deed not duly recorded during his lifetime, under the Fiduciaries Act, is a regular revival of a judgment between the original parties within the meaning of the Act of 1849, which is applicable thereto. Therefore, when the lien of a judgment is extended by the death of a decedent, its lien, as to any real estate conveyed by the decedent by deed recorded before his death, continues against such real estate, for a period of 5 years from the date when the deed is placed on record: Uhler v. Moses, 200 Pa. 498; Kefover et al. v. Hustead et al., 294 Pa. 474.

It appears from the foregoing that the death of D. R. Stine on December 6, 1931, when said judgments were a lien on the real estate in question, operated to continue and extend the lien thereof against said real estate for the period of 5 years from November 29, 1929, when the deed of conveyance from D. R. Stine and wife to Earl C. Stine for this real estate was recorded, and that said judgments were, when the executions in question were issued, are now, and until November 29, 1934, will be, liens upon said real estate.

The lien of these judgments until November 29, 1934, is not affected by failure to join Ella M. Stine, the terre-tenant, as a party to the amicable revivals thereof. All that could be contended under the Act of June 1, 1887, P. L. 289, which provides that no proceeding shall avail to continue the lien against the terre-tenant unless the terre-tenant be named as such in the original sci. fa., is that after said amicable revivals were filed no proceeding could continue the lien of these judgments beyond November 29, 1934: Uhler v. Moses, 200 Pa. 498.

We are satisfied, therefore, that the defendant had, prima facie, the right to proceed with the sale of this real estate upon the judgments above mentioned, and that in doing this it was not simply using the process of the law to harass or annoy the plaintiff.

Unless it be averred and proved that a defendant is simply using the process of the law to harass or annoy the plaintiff, a court of equity does not have jurisdiction, at the instance of the plaintiff, who alleges he owns the land, to enjoin the defendant from levying on and selling a supposed interest of his judgment debtor in it, unless the controlling facts on which the plaintiff in equity relies are proved by matters of record or by undisputed rights, or admitted: Brackin et al. v. Welton Engineering Co., 283 Pa. 91.

Justice Simpson, in the case just cited, quotes with approval from the opinion of the Supreme Court in a former case, as follows (p. 95): "It may and ought to be conceded, that it has been the constant practice in this Commonwealth, for a creditor to seize in execution any property which he may believe his debtor has an interest in, and sell it in satisfaction of his debt. It is an axiom of our law, that, in some form or other, all property of a debtor not expressly exempt, is liable to be taken in satisfaction of his debts. Upon this principle, wherever an interest is alleged, the execution is allowed to go, and the question of interest is afterwards tried on the title obtained at the sale. . . . True, the practice does often put the real owner to the trouble and expense of defending against a title so obtained, and of showing that the debtor had no interest whatever in the property sold. The cloud upon his title is often doubtless an injury; but notwithstanding this, the doctrine that the creditor has a right to seize and sell his

debtor's interest in property, whatever it may be, has been so firmly fixed, that the courts have not been armed with power to interfere in limine".

So it has been repeatedly held that equity will not ordinarily stay an execution against real estate at the behest of a third party, who claims to be the real owner of the property, but will allow the execution to proceed with the statement to the plaintiff in equity that "if he has any equities . . . they can be shown in defense of his title when it is directly attacked in ejectment": Kreamer v. Fleming, 200 Pa. 414, 419: Brackin v. Welton Engineering Co., 283 Pa. 91.

There being, therefore, grounds for the contention of the defendant that the two judgments above mentioned are liens against the real estate in question, there being no averments or evidence that the executions complained of were issued simply to harass or annoy the complainant, and it appearing that the complainant will have an adequate remedy at law, in her defense to any action of ejectment or proceeding brought to recover from her the possession of the real estate in question, we are of the opinion that the motion of the complainant to continue the preliminary injunction should be overruled and the injunction dissolved.

The foregoing are the reasons of the court for overruling the motion to continue the preliminary injunction and dissolving the same. The decision upon the merits of the case is reserved until final hearing, when the same will be disposed of in accordance with the rules of equity practice.

### Decree

Now, October 29, 1934, upon due consideration, the motion to continue the preliminary injunction in the within case is hereby overruled, and the injunction is dissolved. From Robert Stuckenrath, Lewistown, Pa.